CRAWLEY, Judge.
Charles Stanton Sullivan sought review in the Montgomery Circuit Court of an order of the State Personnel Board (“Board”) upholding a decision of the Alabama Department of Environmental Management (“ADEM”) to terminate Sullivan’s employment. The Board found substantial evidence to support ADEM’s decision to terminate Sullivan’s employment based on his failure to comply with ADEM’s rule on tardiness (Policy No. 422), its policy on dress code (Policy No. 405), and its policy on unacceptable behavior (Policy No. 406(4)). The circuit court affirmed the Board’s decision, and Sullivan appeals.
Sullivan raises two issues on appeal: (1) whether ADEM’s attorney committed reversible error during an offer of proof to the hearing officer; and (2) whether the decision to terminate Sullivan’s employment is supported by substantial evidence. Upon a review of the record, we affirm the order of the circuit court.
Sullivan contends that the attorney for ADEM committed reversible error when she attempted to elicit testimony from Francis Allred regarding Sullivan’s use of the State Highway Department’s fitness facility. Mr. Allred is in charge of the State Highway Department’s fitness facility. The attorney for ADEM made an offer of proof, stating that Allred would testify that Sullivan became belligerent and made veiled threats when Allred suggested that Sullivan may have broken some of the fitness facility rules. Sullivan asserts that this offer of proof was made solely in an attempt to create an unfair *1118 bias in the mind of the hearing officer. His argument has no merit.
First, the rules of evidence applied in nonjury civil cases in the circuit courts of this state are to be followed in administrative hearings. See Ala.Code 1975, § 41-22-13(1). The rules of evidence were applied properly in this ease.
Second, Rule 43(c), Ala.R.Civ.P., provides that in cases tried without a jury, the court shall take and report the evidence in full, unless it clearly appears that the evidence is inadmissible on any ground. The testimony of Mr. Allred was not clearly inadmissible on any grounds. Judge Bridges found the testimony not relevant to the charges against Sullivan. Judge Bridges stated that it could be relevant on other things.
Third, Sullivan’s argument that the hearing officer was prejudiced by this offer of proof clearly fails because when the witness was called to testify, the hearing officer did not allow the testimony. The hearing officer had to hear the offer of proof in order to rule on its admissibility. The offer was not evidence and was not considered by the hearing officer. There is a presumption that a judge is not prejudiced or biased. Ex parte Twintech Industries, Inc., 558 So.2d 923 (Ala.1990). Sullivan has presented no evidence to rebut this presumption.
Sullivan also argues that ADEM’s decision to terminate his employment is not supported by substantial evidence. The scope of our review of the Board’s decision is limited to determining whether there is substantial legal evidence to support the determination. State Highway Department v. State Personnel Board, 628 So.2d 878 (Ala.Civ.App.1993); Ala.Code 1975, § 41-22-20(k). Unless judicial review is by trial de novo, the Board’s order “shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact_” Ala.Code 1975, § 41-22-20(k). A review of the record demonstrates substantial evidence to support the Board’s determination.
The Board’s order stated that the charges against Sullivan were essentially insubordination, conduct toward other employees, and failure to follow departmental rules and policies relating to punctuality and notification. The Board considered the hearing officer’s recommendation made following a hearing in which the hearing officer heard and reviewed all the evidence. The hearing officer specifically concluded that Sullivan had been insubordinate and had violated several ADEM policies, including those regarding dress, tardiness, use of work time, and use of leave time. The record is replete with evidence to support the Board’s determination.
The Land Division of ADEM had several staff meetings in which all employees were informed of an “Open Door Policy.” The substance of the policy was that Land Division employees (Sullivan was employed in the Land Division) were to leave their office door open during work hours, unless the employee received prior approval from a supervisor to close the office door for concentration purposes. During the staff meeting when Sullivan was informed of the policy, he interrupted the meeting and informed his supervisors that he did not agree with the policy and that he was not going to follow it. Sullivan’s supervisor testified that Sullivan adamantly refused to comply with the open door policy. One of Sullivan’s co-employees pleaded with Sullivan to abide by the policy, but Sullivan refused to do so. The Board determined that this refusal was clearly insubordinate.
In August 1993, Mr. Cobb, who was then Sullivan’s supervisor, was out of town on business. Mr. Hardy temporarily supervised Cobb’s subordinates, including Sullivan. On two mornings during his supervision, Hardy noticed that Sullivan was a couple of hours late arriving to work. At a staff meeting, Hardy requested that anyone owing him leave slips for the previous pay period should present them to him. Hardy personally asked Sullivan to produce leave slips for his late arrivals, and Sullivan refused to do so. The Board determined that Sullivan’s refusal to obey an order from his supervisor was another example of insubordination.
In September 1993, Sullivan was suspended for three days without pay for failing to meet all job performance standards, for inap *1119 propriate use of work time, and for violations of ADEM policies. The suspension was to have occurred during the period September 8-10, but at Sullivan’s request, it was postponed. Sullivan was informed that during the period of delay of the service of suspension, he would not be granted any annual leave, unless there was a verifiable family emergency, and no sick leave without documentation from a qualified medical doctor. During this period, Sullivan placed a leave slip in his supervisor’s chair without first obtaining approval for the leave time. Without approval, Sullivan took one hour of leave time and later left a voice mail message for his supervisor stating that he would not return to work that day. Sullivan’s only explanation for this absence from work was that he had to meet someone.
Sullivan’s supervisor, Mr. Cobb, testified that in December 1998, Sullivan was scheduled to work at the Baldwin Pole and Piling facility in Bay Mmette, Alabama. On Tuesday of that week, a co-worker’s son died unexpectedly and the memorial service was scheduled for that Thursday. Cobb attempted to notify employees who were working out in the field about the tragedy. When Cobb attempted to locate Sullivan, the facility contact indicated that Sullivan had finished his work the day before. Sullivan did not call the office nor did he attempt to come to work that day.
On Friday, Cobb went to Sullivan’s office to ask him about his whereabouts during the previous workday. Cobb testified that Sullivan told him that he had finished up a little late at the facility so he slept late the following morning and did not return to Montgomery until mid-afternoon. Sullivan stated that he decided not to return to work that day although there were a couple of hours left in his workday after he returned to Montgomery.
Cobb attempted to discuss the situation with Sullivan again the following week, but Sullivan became very belligerent and told Cobb he did not wish to discuss the matter further. Sullivan then told Cobb to get the “_” out of his office.
Cobb also testified regarding Sullivan’s tardiness. He stated that the policy memo requires a worker to telephone if he or she will be more than 15 minutes late for work. Cobb stated that Sullivan was routinely late and never called when he was going to be late. Cobb further stated that Sullivan’s tardiness of 1, 2, or 3 hours on most occasions definitely affected Sullivan’s ability to perform his work. Cobb counseled Sullivan regarding his tardiness, and a notation was also put in writing. Sullivan lost points in his evaluations because of his tardiness. Cobb also testified regarding complaints he had received from Sullivan’s co-workers. The coworkers had noticed Sullivan’s blatant disrespect for the supervisory personnel and his obvious disregard of department policies. Cobb stated that he felt this affected employee morale.
A co-worker of Sullivan’s testified regarding several incidents with Sullivan. On numerous occasions, he said, he requested that Sullivan abide by the department policies, but Sullivan adamantly refused to do so. He also testified that he attempted to collect money from the employees to purchase Christmas presents for the supervisors. When he questioned Sullivan, Sullivan told him that he already had Christmas presents. The co-worker inquired what Sullivan was talking about and Sullivan pulled out a bag of bullets. He said he had a bullet for each of his supervisors. The co-worker did not report the incident to a supervisor, but did tell another co-worker. Cobb eventually heard about this incident.
The record contains other examples of Sullivan’s acts of insubordination. The testimony supports the Board’s determination that Sullivan refused to wear a tie on numerous occasions, although there was an unwritten policy to dress appropriately for work. Sullivan refused to comply with his supervisor’s request for a doctor’s excuse to support Sullivan’s chronic use of sick leave to excuse his morning tardiness. Sullivan received oral warnings regarding his actions, received written warnings, and was suspended for his insubordinate behavior. The record clearly shows substantial evidence to support the Board’s determination.
*1120 Accordingly, the judgment of the circuit court is affirmed.
AFFIRMED.
YATES, J., concurs.
ROBERTSON, P.J., concurs in the result.